now begins the various arguments in in re Motors Liquidation Company and we'll hear the combined arguments in 18 docket 18 1939 and 18 1940 I gather I gather the arguments in 18 docket 18 1940. Mr. Fox. Yes. Good. You may begin. Thank you. Good morning, Your Honors. May it please the court. My name is Gregory Fox. Goodwin Proctor on behalf of the appellants. I'll be splitting our 15 minutes today with my co counsel Robert Snyder with me using nine minutes on issues related to punitive damages and Mr. Snyder using four minutes on issues related to Ms. Reichwald and we request that two minutes be reserved for rebuttal. Thank you, Your Honors. This appeal has become more straightforward since briefing closed. Most of the plaintiffs that we originally represented have settled. All that remains are the claims in two lawsuits brought by the Butler Wooten firm. Those for the estate of Tyler Eason and for Caitlin Reichwald. Tyler Eason was a 14 year old who was tragically killed in his grandmother's GM vehicle. Ms. Reichwald was severely burned in an accident involving another motorist GM vehicle colliding with her car which was not a GM vehicle. Both accidents occurred years after the bankruptcy sale closed and neither of these plaintiffs were served with the 2015 scheduling order or participated in and neither participated in the 2015 proceedings in which Judge Gerber originally ruled that GM did not assume punitive damages from old GM. They were first brought into this bankruptcy in late 2016 when served with an order show cause commencing the litigation through which it was ultimately determined that Judge Gerber's original contractual assumption ruling would be applied against them as law of the case. That was their first opportunity to appeal and they did. To be clear, at the outset of this argument, we are not seeking a ruling from the bankruptcy court or from this court that new GM has liability to our clients for punitive damages or that it's a successor under applicable state law. All we seek is a ruling that those theories that they have under state law remain intact and they can pursue them in their non-bankruptcy forums. I will first address contractual assumption and then move to due process and successor liability. However, the court today does not need to address... Sorry, back then not to... Yes. I apologize for interrupting you. No worries. You want us then if we agree with you to remand this case so it is remanded so that you can argue the position from the get-go before the bankruptcy court? No, Your Honor. What we request is an order vacating the bankruptcy court's ruling which barred our clients from asserting in one case is in Georgia state court, one case is in Georgia federal district court and in those lawsuits, those non-bankruptcy lawsuits, product liability lawsuits. Thanks for reminding me. From asserting punitive damages. From asserting... Those complaints in those non-bankruptcy lawsuits have punitive damage claims and the bankruptcy court has barred our clients from pursuing those damages. This court does not need to address the constitutional due process issues that it warned of in Shadow Gay and that Judge Jacobs and Judge Sack have expressly declined to delineate in the Chrysler matter because the sale agreement in this case is clear that the contract between old and new GM and GM provides that all of old GM's liabilities for post-closing accident product liability cases was assumed by new GM and that necessarily includes punitive damages. This is a simple case of whether a party that contractually assumes all liabilities... You've left out a term of limitation, the ones that arise directly out of death, personal damage claim. Yes. They may. I mean, a punitive damage claim may directly arise, but it's a question whether it arises directly. Yes, Your Honor. The language of the sale agreement does use the words for and arise directly from, and we submit that punitive damages, just like compensatory damages, do arise directly from and are for the injury caused by the defendant. In 2007, the Supreme Court held in Philip Morris v. Williams that a plaintiff cannot obtain punitive damages against the defendant for harms caused by that... That harms that that defendant caused to anybody but the plaintiff. The defendant's causing of an injury to the specific plaintiff is what causes both compensatory damages and punitive damages. If you put a product into the marketplace that injures people, you're exposing yourself to different styles of damages. You're exposing yourself to compensatory damages to give people back what they lost by the injury, and you're exposing yourself to punitive damages for punishment and deterrence for ever doing that to anybody else again. So Your Honor... The purpose of punitive damages is to punish somebody who has done some wrong, to make sure they never do it again, and it seems odd to be imposing that on new GM, which didn't even exist at the time that the wrong actions were taken. It's like having, you know, a whipping boy. This one commits the wrong, and that one gets punished. Your Honor, in response to that question, I would like to state that while new GM and old GM are different corporate entities, they're not wholly different companies. When this sale closed, 200,000 employees of old GM instantly became employees of new GM. As we noted in our briefs, many of the present day officers 10 years after the bankruptcy sale closed were at old GM. If punitive damages, if a jury and a court in Georgia determines that new GM should be subject to punitive damages, something that we're not prejudging today... What's the trial court in Georgia going to instruct them? With respect to is it the same, is it not the same, what factors are they going to consider? I'm following up on Judge Jacob's point, or at least what I take to be his point, that punitive damages, at least as I have understood them throughout my practice and for the few years I've been here, are aimed at punishing somebody so that that somebody, as you said, never does this again. Well, that somebody doesn't exist in my mind. Respectfully, Your Honor, we disagree. The somebody who manufactures and makes sure that cars that go out on the United States roadways are safe and aren't injuring people, the same people who did that at old GM did that at new GM. And if new GM, if the jury and the court in Georgia are presented with evidence that it's appropriate to punish the folks at new GM, either as a legal successor... Yes? I think I'm having one of the problems, it's not the folks at GM, the folks at GM you may be right. If this was about against the folks at GM, the people who were involved, that might be right, that might be punitive. But it's not, it's about GM, and it's a new GM, it's not the old GM. Those folks are gone, and these are new folks, is the problem for me. Well, the folks, the employees, the people whose acts can be impacted by a punitive damage reward, if a punitive damage reward is assessed against the entity GM, the employees at that That's the point of punitive damages. The fact that new GM has different shareholders than old GM, in our view, doesn't change the analysis. Mr. Fox, let me take you down a slightly different path, and feel free to defer to Mr. Snyder if that's more appropriately answered by him. Is the contract ambiguous? We don't believe it is, Your Honor. It says all liabilities. As this court... Injury, et cetera. In a post-closing accident. In a post-closing accident, if there's a product liability case, which occurred to both of our clients, if there was an accident, directly arising from that accident is our claims. Claims to compensate and for punishment. And our position is that... Directly arising from that accident are injuries for which your client has a claim, and I have a hard time conceiving of punitive damages as an injury. I have broken legs, disfiguration, death, sadly. I mean, all of those horribles that have occurred, but I don't see that the punitive damages arise out of the accident. If not for the accident, if not for the injury cause, and if not for what we would be seeking to prove, the abhorrent behavior that led to the accident, there would be no damages. There would have been no injury, and that's what we submit is the linkage there. I see my time is up, and I forgot to talk about the contract, but I'll... And Mr. Snyder's doing a rebuttal. Well, feed him. Well, I'm actually going to do a rebuttal. All right. I'll respond, and we rest on our briefs on that matter, and we believe that the contract was clear and that the fact that they drafted a specific exception for punitive damages in the definition of damages demonstrates that they knew exactly how to do so, and they didn't do it in the relevant section. Let me ask you this. I'm sorry. No, that's... Please. Go ahead. The phrase... The provision you're referring to is the definition of damages with a capital D. Yes. But it looks like that very word, that term of art, is only used once in the whole thing, and it's something completely unrelated to these sections that are an issue in this case. Correct your honor. And yet, everything here, everything we're talking about is a matter of damages. So, you're saying that that definition of damages only applies to the single place where the word damages is capitalized. Correct your honor. And we're also talking about liabilities. The definition of liabilities was drafted to be as broad as humanly possible. There was no exceptions. It was meant to cover every species of potential liability. Damages covers every liability except for punitive damages. And just like this court held in Maverick 2, by creating a definition with highly sophisticated counsel, and using that definition elsewhere in the agreement, you can't just impose that definition into a place where it wasn't used. The fact that they used different definitions in different places we believe should be dispositive in this case. Thank you. Thank you. Mr. Snyder, good morning. May it please the court. Rob Snyder for the appellant, Caitlin Reichwald. I'm going to try to get right to the heart of the issue that I'm going to talk about today with respect to Ms. Reichwald. And that is res judicata in law of the case. So, General Motors has taken the position that Ms. Reichwald is precluded from even making this contractual assumption argument that Mr. Fox was just discussing with the panel. And that's just incorrect for two reasons. First, Mr. Fox is representing Ms. Reichwald on appeal of the 2017 order that held that GM had not assumed liability for punitive damages. As an appellant in that appeal, if this panel were to reverse Judge Glenn, Ms. Reichwald should get the benefit of that ruling. And if the court agrees with that proposition, then that should be the end of the res judicata question. Ms. Reichwald has said from the beginning that she understood that she was bound by the court's order and that she would be barred from making this argument unless and until the order was reversed. And what Mr. Fox is asking this panel to do is to reverse the bankruptcy court in its conclusion that new GM did not assume liability for punitive damages and that if this panel does so, Ms. Reichwald should get the benefit of that ruling. And the bankruptcy court and the district court got confused and sidetracked at various times on whether Goodwin-Proctor was representing Ms. Reichwald. There's no dispute about that. Mr. Fox said it here in his presentation. They said it in their papers. The lawyer said that they were not representing her. Regretfully, Your Honor, that's correct. There was a mistake. It was my fault. And then there's something that corrects in an addendum, but where is it? The addendum? Yeah. The addendum is not in the record, Your Honor. The statement was made in a footnote in response to GM's motion to enforce in connection with an earlier argument that GM was making about collateral estoppel. But the argument that Ms. Reichwald has been making from the beginning had nothing to do with whether Goodwin-Proctor was representing her. And in fact, Judge Glenn in the bankruptcy court expressly said that he was not determining whether Goodwin-Proctor was representing Ms. Reichwald. He did not need to because we agreed, and as we always have agreed, that Ms. Reichwald is bound by that 2017 order. So the question now is what happens if this panel reverses that order? Well, I'm sorry, Your Honor. That's the question. Well, that's the question. So we think it's easily answered by the fact that Goodwin-Proctor is representing her. But even if this court were to disagree, we think that for purposes of appeal, every plaintiff who received notice of the order to show cause should get the benefit of a reversal of the court's orders. And that's because the bankruptcy court specifically told it was more than 600 plaintiffs. They got a certified letter that said, we're going to consider some very specific issues. And Goodwin-Proctor and Brown-Rudnick will be drafting the plaintiff's briefs. And if you do not oppose that procedure, then you will agree to be bound by the order.  The court entered an order, and she's bound by it. If this court reverses that order, then she should be bound by that order on reversal. There's no, you know— She should have the benefit of it. She should have the benefit of it, Your Honor. And this court has held that res judicata is a, quote, awkward fit in the bankruptcy world. It's not a normal plaintiff and defendant situation. What we had here was a procedure that Judge Glenn created out of thin air whereby these plaintiffs receive a letter in the mail. And they were told, if you don't have a problem with Goodwin-Proctor making the plaintiff's arguments, then you agree to be bound by this court's rulings. And what we would ask this court to do is to enforce that order as written. And if it reverses, chooses to reverse Judge Glenn as Ms. Reichwald urges this court to do, then she should get the benefit of any such ruling. Thank you. Thank you, Mr. Schneider. Ms. Murphy, you're first. Good morning, Your Honors. And may it please the Court, Erin Murphy on behalf of Applied General Motors, LLC. We'll be dividing our time this morning between two advocates as well. And my colleague, Mr. Godfrey, will spend seven minutes addressing the questions of whether new GM assumed liability for punitive damages, whether pursuant to the sale agreement or as a matter of successor liability. But first, I would like to spend my eight minutes talking about why we don't think the Court needs to reach the issues here because there's no party that has properly presented them. To make clear that his argument is unnecessary. Precisely, Your Honor. As we understand it at this time, there's two and only two potential parties to either of these appeals. There's Mr. Eason, who purports to be a party to the appeal noticed by Goodwin-Proctor on behalf of those certain post-closing accident plaintiffs. And there's Ms. Reichwald, who purports to be a party to both of these appeals. Now, Ms. Reichwald faces the insurmountable burden that both the Bankruptcy Court and the District Court found that she was not a party to the appeal that Goodwin-Proctor noticed. And they found that because her counsel adamantly insisted in the Bankruptcy Court that she was not represented by Goodwin-Proctor either there or on appeal. Is there an addendum that walked that back? We have never seen the addendum. It was referenced for the first time in a reply brief in the appeal in the District Court. And I do think it's really important to understand in context, you know, these were not statements that were kind of inadvertently dropped in a footnote somewhere. When we went to Ms. Reichwald and said, your complaint needs to be amended to comply with the July 17, 2017 order, her counsel, they responded in Georgia District Court by saying, no, it doesn't, first because they insisted that the order hadn't resolved contractual assumption at all and said it was only dicta on that. But then also said... Did she prevail on that argument? She did not prevail. Well, she didn't end up getting it resolved there. But she told both that court and the Bankruptcy Court she wasn't bound by res judicata because Goodwin-Proctor was not her counsel. That it was a strategic argument being made that she said she was not participating in the proceedings because Goodwin-Proctor was not her counsel and that she, therefore, had never had an opportunity to appeal. Now, she lost on those arguments because they were incorrect even on the assumption that, you know, regardless, basically, of who was representing her. But having made a strategic decision to insist to the Bankruptcy Court that she wasn't represented by Goodwin-Proctor and that she did not take an appeal, the Bankruptcy Court was correct to make a finding, which it did, clearly. I think it's at page 27 of the court's opinion that she didn't appeal. And the District Court affirmed that as a not clearly erroneous factual finding. So on this record, you know, Ms. Reichwalt just is not a party to this appeal. Now, I can understand why that has led her counsel to focus on this exceedingly broad argument that any benefit gotten in the other appeals should go to every single plaintiff as to whom the 2017 order applied. That really is completely inconsistent with the rules set forth in the Supreme Court's Moiti case and... here. What do you say to your adversary's argument that damages capitalized is all losses other than punitive damages and that the word damages capitalized? Well, I will actually, if you don't mind, defer those issues to my colleague, Mr. Godfrey, who's going to discuss the merits, if you don't mind. But he will be prepared to answer that. But if I could just make a couple final points on the issues of preclusion and on the jurisdictional issue as well, because we do think there is a fundamental jurisdictional problem here. The notice of appeal in this case just does not make it objectively clear, as this court has said the standard requires, who is a party to this appeal. Are you saying that your client is unable to figure out who they are? Yes. You know, and I think there's no better illustration of that than the fact that when we said below that we thought Ms. Reichwalt was a party, they said, no, she's not. And then they said, yes, she is. And now here we have two appeals pending, one of which being about whether someone is or is not a party. And there's no objectively clear answer to that, because there's nothing anyone can point to in the record that says who those certain post-closing accident plaintiffs are. It's not in the notice of appeal. It's not in the caption. It's not in what they said. And unlike other cases, there's not something that sets forth, here's the particular plaintiffs that we're representing in, say, a certificate of service. Now, we have some sense of who we believe to be the clients represented by these four firms. You don't know who they're representing? We think we know as a result of the reply brief. They've told us at a very late stage in the case who they're representing. But Rule 3 required them to provide that information in the notice of appeal itself. Now, I would say, to the extent the court ends up reaching the merits, I think that you should do two things. First, I think the caption should be amended to make clear precisely who is a party to this appeal, so that we know who took an appeal and who didn't. You don't know who they are. We don't know who they are, and precisely for that reason, we think that this appeal needs to be dismissed for lack of jurisdiction. If you disagree, we think that it would be extremely beneficial to everybody to know who this court has decided is and is not bound, and who did and did not take an appeal. In large part because this proposition that every single plaintiff, whether they appealed or not, gets the automatic benefit of any decision this court issues is really not a correct proposition. The rule set forth by both the Supreme Court in the Moiti case and this court in its Hegeler case is that presumptively non-appealing parties don't get the benefit, even if it's the same decision that would have impacted both of them. Now, I don't think the court has to decide in this case what the implications for non-appealing parties are, but I also don't think the court should reach out and decide that, because it's a much more complicated issue than to simply say, as long as they find one plaintiff who doesn't have a res judicata problem, and that plaintiff gets a reversal, then every single other potential plaintiff out there gets the benefit, even if, say, they might be plaintiffs who clearly were served with and by the 2015 sale order, and had they taken their own appeals, would not have been able to present these issues to the court because of res judicata. So we think it's extremely important to make clear who is a party to this appeal in the event you reach the merits, which we don't think you should. And then the last thing I would say about it is we think it's extremely important that should the court reach the merits, you reach the merits only to the extent that there are issues presented here that the two potential plaintiffs have raised. And one way in which that has manifested itself at this point is that the only two potential parties left here, Mr. Eason and Ms. Reichwald, they have not asserted successor liability claims in their underlying lawsuits. So while they have briefed to this court the question of whether they could get punitive damages on a successor liability theory, the complaints they filed, both their original complaints and their amended complaints, don't assert those assumption theories. So while there certainly may be plaintiffs out there who would like to raise arguments about successor liability separate and apart from the contract, this appeal certainly, to the extent there's any jurisdiction at all, doesn't present at this point an occasion for this court to consider them. With that, I will cede the podium. Thank you, Ms. Murphy. Mr. Godfrey? Good morning. May it please the court. Richard Godfrey on behalf of Due GM. One half of the case that has been briefed to this court is no longer relevant. And as the Second Circuit said in its July 13, 2016, opinion on equitable mootness, we don't address hypotheticals. So all the successor liability arguments that have been briefed before the court that were raised by the certain post-closing accident plaintiff victims of whom's identity we had no knowledge whatsoever until the reply brief, none of those issues are before this court because in the complaints of both Eason and Reichwald, the sole claim is the allegedly expressed assumption of punitive damages liability in Section 2.3A Romanet 9. And so half or more of what is before you is the attempt to obtain a hypothetical advisory ruling. And the court ought to be aware of that. And following the Second Circuit's decision of July of 2016, that is not appropriate for the court to address. That's one of the reasons why it's so important to know who the appellants are. Now, the answer to your question, Judge Jacobs, about damages being capital D versus little d is answered by Judge Gerber in his opinion on footnote 49, 541BR, page 120 and 121. And I will quote, I don't know how I missed it. Here's what he says. The post-closing accident plaintiffs point out that when the term damages, quote, initial caps, as defined in Section 1.1, was later used in the sale agreement. It was used only in a different context. Nevertheless, the exclusion of punitive damages in Section 1.1's broadly applicable definition of, quote, damages, end quote, supports the new GM's contention that the party's general intent was that new GM would never assume punitive damages relating to any old GM liability or relating to any old GM conduct, end quote. In addition, to believe the plaintiff's argument, you'd have to conclude that there were two different definitions of damages in the complaint, in the sale agreement. One in which punitive was excluded and the other one in which it was included. You cannot find any such indication in the plain text of the agreement. Third, there's a game that's being played here. They keep saying all liabilities. That's not what new GM agreed to. It didn't agree to all liabilities. It agreed to all liabilities that were then conditioned on express terms of the agreement. All liabilities, and Judge Gerber spells this out in detail in his November 15th opinion of 541 BR 104, et cetera, to third parties for death, personal injury or other injury. In each case, manufacturers sold or delivered by vehicle cause and then arising directly out of, et cetera, et cetera. It doesn't refer to damages in the all liabilities. Suddenly you go to the word definition of liabilities. What does all liabilities mean? All liabilities doesn't refer to damages either. Losses is what refers to damages and that includes as a subset all liabilities. That's page 888 or page 11, if you prefer, of the sale agreement. Losses includes, so damages, capitalized damages includes all losses other than punitive. Except punitive. Losses is defined to include damages. Yes. Losses includes damages. Lower case. But damages does not include punitives. And so when you look at it. Losses does not include. Punitives. Well, that's capitalized. Damages doesn't, does not. Correct. But if capitalized damages includes losses, capitalized, and capitalized losses includes damages lower case, it doesn't seem like the ideal form of drafting, but it. You'd have to conclude that the parties intended two different sets of definitions for damages when new GM had no exposure because of the insolvency of old GM. That would make no sense. As Judge Gerber said, it was implausible. It's facially implausible. I go back though to Judge Hall's question though. What is the purpose of punitive damages? If you look at the definition, we didn't say all liabilities. They didn't say all liabilities arising out of motor accidents. They said all liabilities, and they were very specific in the definitions here. They said all liabilities for, for death, personal injury, other injury. They said caused by accidents, arising from the accidents. It is very tightly tied and cabined. And punitive damages simply do not fit that bill. And that is why Judge Gerber went through, in his opinion, each of the various words and said, doesn't satisfy here, doesn't satisfy there, didn't arise directly out of. Punitive, Your Honor is correct. Punitive damages are designed to punish. Here, if you imply or rewrite the contract to have punitive damages be part of Section 2. A, Roman at nine, you are punishing innocent creditors. You are punishing the wrong party. That makes no sense whatsoever. It's not what the parties entered into in the contract. Remember, this contract was set up as all liabilities under Section 2. 3B are retained unless expressly assumed. You cannot find an express assumption of punitive damages unless you rewrite the contract. They say, oh, but punitive damages can only be awarded if there's compensatory. Yes, compensatory damages are a necessary but not sufficient predicate for punitive damages. That's why most trials have the compensatory phase. And if there's liability, then you have a punitive phase where different evidence comes in. And what is the evidence that comes in? The evidence that comes in is the broad, reprehensible conduct and the evidence of the defendant. And the financials. And the financials, of course. Having nothing to do with that of the individual named plaintiff. They say that the companies are the same. They're not the same. There's a successor in bankruptcy to this day, in Ray Motors' liquidation company. There's two other arguments that they make, though, in reply for the first time that I feel the need to comment on. One is, they say, that General Motors has admitted in its SEC filings that it assumed the liability. It has a new argument in reply. It's also wrong. If you look at the SEC filings, General Motors never says that it has assumed punitive damages. It's merely reporting on the claims that have been made against it. You can look at those SEC filings. They cite them. The second thing they say, and I'll conclude my argument on this point, is they say that, well, General Motors, for the first time on appeal, is making the argument for, that it must be for, personal injury. Well, that's not true either. That's coming right out of Judge Gerber's opinion, the 541-BR opinion, and that is at page 128. This is an argument that Judge Gerber accepted and wrote an opinion on in November of 2015. We would ask that the court affirm the decisions below. If it chooses to accept jurisdiction here, we think there are big-time problems with the jurisdiction for the obvious reasons stated, not the least of which is, at this point, over half the issues briefed before this court have nothing to do with the two appellants who appeared before the court. Unless the court has any further questions, it's always a privilege to be here, and thank you very much. Thank you, Mr. Godfrey. Mr. Fox? Yes, Your Honors. Thank you for the time. I'm going in reverse order. I believe my opponent misspoke when he said that the SEC filings say that the punitive damages that they were reporting on their 10-Ks was for the claims asserted against them. It was the SEC filings stated that they were accruing liabilities on their books for punitive damage claims asserted in old GM vehicle cases. And those statements only stopped occurring in 2014 when new GM was facing a deluge of product liability lawsuits resulting from its belated disclosure of the ignition switch defect. And so we would request that Your Honors take a look at that. My opponent also said that the words for have tightly tied and we disagree. If you were drafting an agreement where you were explicitly excluding punitive damages, you wouldn't have done it this way. You would have used the defined term damages. You would have explicitly said that punitive damages are not part of the assumed liabilities, which is what they did in the Chrysler case. Or you would have had an explicit reference to punitive damages as they did for asbestos and silica matters in that very section of the contract. Finally, on jurisdiction, our notice of appeal comports completely with Rule 3 of the Federal Rules of Appellate Procedure, which specifically allows attorneys representing more than one party to refer to them as a group. GM's order to show cause was served on each plaintiff in which was in a lawsuit that was asserting punitive damages. It referred to each plaintiff by law firm and by name. Both Ms. Eason and Ms. Reichelt were on there. Goodwin-Proctor at all times represented both of Butler Wooten's plaintiffs. It is unfortunate that the Butler Wooten firm made a misstatement. Goodwin-Proctor at all times said that it was representing all of the plaintiffs represented by the four firms listed on our notice of appeal. Those are the plaintiffs that we were representing. Many of them have settled. Mr. Eason's estate and Ms. Reichelt have not. And then finally, Your Honors, we would note that on the successful liability and due process, there's nothing that prevents the Eason and Reichelt plaintiffs from asserting successful liability as amendments in their complaints. Their complaints just request punitive damages. It doesn't necessarily spell out how they get to punitive damages. But a plaintiff can obtain punitive damages against the successor. Our view is that there's nothing that can occur in a 2009 bankruptcy to take away the state law rights of asserting successful liability and punitive damages for an accident victim that won't be injured for years into the future. These are the very future claimants that this court warned of in Shadowgay and in Chrysler. But, Your Honors, do not need to address that issue. But if you did, we would submit that there's nothing that a sale order, there's nothing in the fresh start policy of bankruptcy code or 363 of the bankruptcy code that can allow a bankruptcy court to reach into the future and take away the rights of people that have no claims at that time. Thank you, Your Honors. Thank you very much. We'll reserve decision in this case or these cases and call our next In re Motors liquidation company or the last one.